Board of Tax and Land Appeals
No. 2010-094

APPEAL OF CITY OF LEBANON
(New Hampshire Board of Tax and Land Appeals)

Argued: September 16, 2010
Opinion Issued: February 23, 2011

*Gardner Fulton & Waugh, P.L.L.C.*, of Lebanon (*Shawn M. Tanguay* on the brief and orally), for the petitioner.

*Sulloway & Hollis, PLLC*, of Concord (*Margaret H. Nelson* on the brief and orally), for the respondent.

HICKS, J. The City of Lebanon (city), appeals a decision of the New Hampshire Board of Tax and Land Appeals (BTLA) granting Colonial Plaza Realty Trust (trust) an abatement of taxes imposed on its property for the years 2006 and 2007. We affirm.

The following facts are supported by the record. The trust owns two adjacent parcels located at 3 and 5 Airport Road in Lebanon, identified on

the city's Tax Map 114 as Lots 6 and 8 respectively. In 2004, the trust entered into a ground lease with GP West Lebanon, LLC (GP West) to allow GP West to build and operate a Walgreens drug store on Lot 6. The terms of the lease allow GP West to sublease the property to Walgreen Eastern Co., Inc. (Walgreen), making Walgreen the effective tenant under the lease. The lease term is for seventy-five years with Walgreen having the right to terminate the lease at specified periods after the first twenty-five years.

The lease provides Walgreen with, among other rights and responsibilities, the responsibility to demolish any existing improvements and "construct a building and improvements for the initial use as a Walgreens store" and the right to enter into agreements with utility companies. In addition, it states that Walgreen "shall maintain and repair all portions of the Leased Premises, Building and Site Improvements." With respect to real estate taxes, the lease provides, in pertinent part:

> (a) Tenant shall pay all taxes levied or assessed against the Premises ("Real Estate Taxes") before such taxes become delinquent and shall be deemed to be "Additional Rent". . . .

>> (i) Landlord shall have all real estate tax bills for the Premises forwarded by the applicable taxing authorities directly to Tenant and, at Tenant's request, if possible, the real estate tax bills shall be in the name of Tenant or Subtenant. . . .

>> . . . .

>> (iii) Tenant shall have the right, at its expense, to seek a reduction or abatement in, or otherwise challenge, the Real Estate Taxes for the Premises. Tenant may contest such real estate taxes in its own or in Landlord's name and Landlord agrees to provide Tenant with all reasonable assistance (at no cost to Landlord) in such contest, including, joining in and signing pleadings. Any reduction or refund of Real Estate Taxes obtained shall be paid or credited to Tenant, as the case may be. . . .

On August 24, 2007, the trust filed a tax appeal with the BTLA contesting the 2006 and 2007 assessments of Lot 8 pursuant to RSA 76:16-a. *See* RSA 76:16-a (2003). In its appeal, the trust did not indicate that it owned Lot 6 as well as Lot 8. At some point, Walgreen filed a separate tax appeal contesting the 2006 and 2007 tax assessments of Lot 6. As part of the trust's appeal process, the BTLA requested that the city "provide map/lot numbers . . . for all property owned by the [trust], whether or not appealed." The city identified Lots 6 and 8 as being owned by the trust.

On December 21, the BTLA notified the trust's tax representative of "a discrepancy between the [city's] information regarding other property owned and the appeal form you submitted." The BTLA asked the trust to verify whether it also owned the property on Lot 6. The trust's tax representative responded by stating, "Regarding additional properties owned: We concur with the City of Lebanon that Map 114/Lot 6 is under the same ownership and should be included in this docket."

Thereafter, an issue arose regarding "whether there was an agreement between the [trust] and the [city] that . . . [Lot 6] . . . would *not* be part of the appeal for each tax year." Following a hearing on this issue, the BTLA ruled that "no agreement existed between [the trust] and [the city] to the effect that Lot 6 would *not* be a part of the [trust's] appeals." The BTLA then identified what it deemed to be a "larger substantive issue":

> whether the City, in the [trust's] appeals, can offset any overassessment on the Colonial Plaza shopping center (Lot 8) against any underassessment of the Walgreen drug store (Lot 6). The board notes the parties take conflicting positions on this issue based on several lines of authority, including *Appeal of Sunapee*, 126 N.H. 214, 217 (1985), cited by the City, and the board's August 26, 2008 "Wal-Mart" Order, submitted as Taxpayer Exhibit No. 2.

The BTLA deferred ruling on this issue, which it referred to as the "one estate or two" issue.

Subsequently, both parties submitted memoranda of law. The city argued that because the trust owns Lot 6 and Lot 8, the assessments of both lots must be considered in determining whether the assessments of Lot 8 were disproportionate or illegal under *Appeal of Town of Sunapee*, 126 N.H. 214 (1985). Conversely, the trust maintained that Lot 6 and Lot 8 "should be treated as separate estates for the purposes of determining the fair and proportional assessments of each lot under New Hampshire law." According to the trust, since Walgreen consented to be taxed on Lot 6 and has exclusive possession and use of Lot 6 for up to seventy-five years, the trust should not have to present evidence regarding the proper valuation of Lot 6 in its appeal of the assessments on Lot 8.

The BTLA found that the lots are separate estates for purposes of the tax abatement appeals and, thus, the trust did not have to present evidence as to the valuation of Lot 6 in its appeals. According to the BTLA, in doing so, it gave "operative significance to the words used by the legislature in RSA 76:16 and 76:16-a, which give[] 'any person aggrieved' by a tax assessment the right to contest it." It further relied upon RSA 73:10, which provides that "[r]eal . . . property shall be taxed to the person claiming the

same, or to the person who is in the possession and actual occupancy therof, if such person will consent to be taxed for the same." RSA 73:10 (Supp. 2010).

The BTLA noted that the city's argument "raise[d] an admittedly close question of law on which reasonable minds may disagree." However, it ultimately relied upon its reasoning in a prior order on a separate appeal with similar facts involving the city and Wal-Mart (Wal-Mart appeal). In the Wal-Mart appeal, the BTLA found that "because Wal-Mart [was] 'in the possession and actual occupancy' of the real estate and ha[d] consented to being taxed for all of the collective fee interests" of the lot despite not being the fee simple owner of the land, it was the " 'taxpayer' " and the lot

> assessment reflects the share of the common tax burden Wal-Mart has consented to be assessed for.

> To hold, as the City argues, that the collective multiple fee interests of [the landowner] (be the [sic] land only or land and building) in the various parcels with some [of the landowner's] interest . . . comprise the estate that must be considered under *Sunapee* would result in a contorted and complicated valuation process that is not envisioned by the statutes or case law.

Thus, the BTLA ultimately concluded that Wal-Mart, not the landowner, was the " 'person aggrieved' " by the tax for the tax years under appeal and was "the taxpayer whose total estate must be considered to determine proportionality under *Sunapee.*"

Applying this reasoning to the trust's appeal, the BTLA found that "it would be impractical, as well as unduly burdensome and arguably unfair, to require either [the trust] or Walgreen to be held to an evidentiary standard requiring each taxpayer to rebut the possibility the other property (Lot 6 in the [trust] appeals and Lot 8 in the Walgreen appeals) was underassessed." Thus, the BTLA ruled that "the assessments challenged by [the trust] (Lot 8) and Walgreen (Lot 6) w[ould] be judged for proportionality separately."

On August 20, 2009, the BTLA conducted a hearing on the merits of the trust's appeals. The city moved to dismiss based upon standing and the "one estate or two" issue. The BTLA denied both motions. Subsequently, the BTLA ordered an abatement of the assessments on Lot 8. The city's motion for rehearing on the "one estate or two" issue was denied, and this appeal followed.

Appeals from decisions of the BTLA are governed by RSA chapter 541. *See Appeal of Kat Paw Acres Trust*, 156 N.H. 536, 537 (2007).

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the [BTLA] to show that the same is clearly unreasonable or unlawful, and all findings of the [BTLA] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007); *see Appeal of Town of Wolfeboro*, 152 N.H. 455, 458 (2005).

The city argues that the BTLA erred in failing to apply the correct standard for proving disproportionate tax assessment as laid out in *Appeal of Town of Sunapee*. The city maintains that "the legal obligations of the due process and equal protection clauses of the New Hampshire Constitution as they relate to taxation, as aptly put forth in *Appeal of Town of Sunapee*, must be universally-applied" to allow every person in the state to receive his constitutional benefits under these clauses.

■ *Appeal of Town of Sunapee* involved a request for an abatement of taxes by "taxpayers [who] owned two adjoining lots in Sunapee." *Appeal of Town of Sunapee*, 126 N.H. at 215. The parties seeking the abatement were the taxpayers for both lots. *See id.* We stated:

> When a taxpayer challenges an assessment on a given parcel of land, the [BTLA] must consider assessments on any other of the taxpayer's properties, for a taxpayer is not entitled to an abatement on any given parcel unless the aggregate valuation placed on all of his property is unfavorably disproportionate to the assessment of property generally in the [city]. Justice does not require the correction of errors of valuation whose joint effect is not injurious to the appellant.
>
> When a taxpayer owns two parcels, then, a request for abatement on the first will always require consideration of the assessment on the second.

*Id.* at 217 (quotation and citations omitted); *see Bemis &c. Bag Co. v. Claremont*, 98 N.H. 446, 451 (1954).

■ Put another way, to determine if

> the assessment placed on [the taxpayer's] property as a whole is disproportionately higher in relation to its true value than is the

case as to other property in general in the taxing district . . . all of [the taxpayer's] taxable estate in the city and its total tax must be considered regardless of any agreement as to any part thereof which might have been arrived at between the [taxpayer and the municipality].

*Bemis &c. Bag Co.*, 98 N.H. at 451 (citation omitted) (involving a petition for abatement of tax on stock in trade).

We have not had occasion to address the circumstances presented in this case where the taxpayer owns two lots but is the taxpayer with respect to only one lot. We now clarify that when a taxpayer owns more than one parcel in any given municipality, a request for abatement on one will always require consideration of the assessment on any other parcels for which the owner is also the taxpayer.

This approach comports with the purpose of the standard laid out in *Appeal of Town of Sunapee* and *Bemis &c. Bag Co.* for determining whether an individual taxpayer is entitled to an abatement by requiring the taxpayer to present evidence of assessments only on property for which it has a tax burden. The standard stems from the constitutional principle "that all taxes on 'estates' shall be proportional and reasonable (Const. Pt. II, *Art.* 5) which means equal and just." *Id.* at 450. "Equality in the burden of taxation cannot exist without uniformity in the mode of assessment as well as in the rate of taxation." *Id.*

Indeed, it is the taxpayer who bears the burden of paying the tax. *See* BLACK'S LAW DICTIONARY 1600 (9th ed. 2009) (defining "taxpayer" as "[o]ne who pays or is subject to a tax"). Because the taxpayer bears the burden of any disproportionate tax, it follows that the taxpayer shall be entitled to the benefit of any abatement. It would be contrary to the constitutional requirement of proportional and reasonable taxation to require the taxpayer to present evidence of assessments on property that it owns but for which it does not pay the tax, *i.e.*, property for which it does not bear any of the burden. Accordingly, we decline to adopt such an approach.

In this case, the BTLA did not err in concluding that, for the tax years in question, the trust was the taxpayer with respect to Lot 8 and Walgreen was the taxpayer with respect to Lot 6. *See* RSA 73:10; *Appeal of Reid,* 143 N.H. 246, 249 (1998) (finding that leasehold interests are taxable if the leases are either perpetual, renewable indefinitely *or the leaseholder agrees to pay taxes on the value of the land*). Although the trust owns both lots, it paid taxes on only Lot 8. Since the trust was the taxpayer

with respect to only Lot 8, not Lot 6, its taxable estate for purposes of an abatement of taxes on Lot 8 was *only* Lot 8. *See Bemis &c. Bag Co.*, 98 N.H. at 450. Therefore, when the trust challenged the assessments on Lot 8 as disproportional to its share of the common tax burden for 2006 and 2007, it was required to submit evidence regarding the assessments on only Lot 8. *See id.* at 451. Accordingly, it was not clearly unreasonable or unlawful for the BTLA to find that Lot 6 and Lot 8 were separate estates for purposes of the trust's tax abatement appeal and that only the assessments on Lot 8 would be considered in the trust's appeal.

*Affirmed.*

DALIANIS, C.J., and DUGGAN and CONBOY, JJ., concurred.